**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| HAYES YOUNG AND ROY A. WILLIAMS,<br><br>Plaintiffs,<br><br>v.<br><br>HYUNDAI KEFICO, INC.,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Hayes Young and Roy A. Williams for their class action complaint allege the following through their attorneys Squitieri & Fearon, LLP, on behalf of themselves and all others similarly situated based on personal knowledge as to their own vehicles and upon information and belief as to all other matters based upon their counsel's investigation. Counsel expects substantial additional evidence in support of these allegations will be adduced through discovery.

## I. PRELIMINARY STATEMENT

1. Plaintiffs brings this action on behalf of themselves and on behalf of all similarly situated persons ("Class Members" and/or "Sub-Class Members") in the United States who purchased or leased any Hyundai Genesis or KIA vehicle models identified herein (the "ICCU Cars") which had Integrated Charging Control Units ("ICCUs") installed and manufactured by Defendant. The ICCUs for certain model years and makes for KIA, Hyundai and Genesis as specified herein fail due to design defects (the "Defective ICCUs").

2. This action was commenced to obtain money damages and/or injunctive relief arising out of diminution in value ICCU Cars into which Defective ICCUs were installed, tow costs, loss of use, and loss on sale or surrender of lease and/or overcharges (due to the ICCU defect which affected the vehicle's safety, operability, charging capacity and capability fitness

for its intended use), and/or the cost to repair, retrofit or replacement of the ICCU Cars Defective ICCUs manufactured by defendant.

## II. PARTIES

3. Plaintiff Hayes Young ("Young") is a resident of the State of New Jersey who purchased a Hyundai 2023 Wagon GY IONIQ 5 SEL with a Defective ICCU which affected the vehicle's performance.

4. Plaintiff Roy A. Williams ("Williams") leased a 2025 KIA EV6, SUV. He leased it new and at the time of the incident described herein the vehicle had only approximately three thousand miles on the odometer. One evening while his wife was operating the vehicle on a Kentucky highway, the vehicle switched to "limp" ode after a loud explosive sound putting her in grave danger.

5. Defendant Hyundai Kefico, Inc. ("HK") is the manufacturer of the ICCU used in the ICCU Cars. HK's ICCU is shared across all of the brands, models and years of the ICCU Cars. HK is the only manufacturer of ICCUs used in the ICCU Cars.

6. HK maintains a corporate office at 1705 Platt Place, Montgomery, Alabama and manufactured the Defective ICCUs in Alabama.

## III. JURISDICTION

7. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1332( d) and 1453, because (1) this action is a "class action," which contains class allegations and expressly seeks certification of a proposed class of individuals; (2) the putative Class consists of more than one hundred proposed class members; (3) the citizenship of at least one class member is different from Defendant's citizenship (Alabama and/or Delaware); and (4) the aggregate amount in

controversy by the claims of Plaintiffs and the putative Class exceeds $5,000,000, exclusive of interest and costs.

8. Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391 because Plaintiff Young resides and purchased his vehicle in New Jersey and Defendant is subject to personal jurisdiction in this District, and the actions of the Defendant that give rise to the claims against it in this action took place in part at least in this District.

## IV. CLASS ACTION ALLEGATIONS

9. Plaintiffs repeats and re-allege and incorporate the allegations contained in the paragraphs above.

10. Plaintiffs bring this action pursuant to Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and a Nationwide Class for unjust enrichment under Defendant's home state law of Alabama and on behalf of sub-classes based on the local laws of each Plaintiffs' home state (*i.e.*, New Jersey and Kentucky respectively) consisting of:

> All persons who purchased or leased, anywhere in the United States, a Hyundai and/or Kia models (collectively the "Defective Vehicles") as follows:

| | |
|---|---|
| 2022-2024 | KIA EV 6 |
| 2022-2024 | Hyundai IONIQ 5 |
| 2023-2025 | Hyundai IONIQ 6 |
| 2023-2025 | Genesis GV 60 |
| 2023-2025 | Genesis GV 70 "Electrified" |
| 2023-2024 | Genesis GV 80 "Electrified" |

11. Plaintiffs reserve the right to amend the definition of the Class and/or sub-classes.

12. This action is properly maintainable as a class action for the Class and/or sub-classes.

13. There could be over several hundred thousand members of the sub-classes based upon Hyundai's Genesis' and KIA's own public sales figures of vehicles sold with Defective ICCUs. Accordingly, joinder of all members is impractical.

14. Common questions of law and fact exist as to all members of the sub-class and predominate over any questions solely affecting individual members of the sub-classes. Among questions of law and fact in common to the sub-classes are:

a. Whether Defendant misrepresented the ICCU features, risks, capabilities and limitations;

b. The extent of the ICCU features which are inoperative or not operative as Defendant represented;

c. Whether the Defective ICCUs have design defect;

d. Whether Defendant in its marketing and sale of the component violated the consumer protection laws and/or warranty laws of New Jersey and/or the Commonwealth of Kentucky;

e. Whether Defendant breached express and/or implied warranties when it delivered the Defective ICCUs;

f. Whether Defendant was unjustly enriched by using a cheaper, less safe, less reliable charging component without warning purchasers in order to improve its profits at the expense of class member; and

g. The extent of damages/diminution in value/overcharges and/or repairing or replacement costs resulting or other costs from the Defective ICCUs.

15. Plaintiffs' claims are typical of the claims of each member of each of the Class in that Plaintiffs allege a common course of conduct by Defendant toward each member of the

Class. Specifically, Defendant violated the consumer laws New Jersey and Kentucky and breached its warranties with each member of the sub-classes. Plaintiffs and the other members of the sub-classes seek identical remedies under identical legal theories. There is no antagonism or material factual variation between Plaintiffs' claims and those of the sub-classes.

16. Plaintiffs shall fairly and adequately protect the interests of the members of the sub-classes and have retained counsel who have extensive experience prosecuting class actions and who, with Plaintiffs, are fully capable of, and intent upon, vigorously pursuing this action. Plaintiffs have no interest adverse to the sub-classes within the States of New Jersey and Kentucky.

17. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Furthermore, the damage that has been suffered by any individual Class member is likely not enough to sustain the expense and burden of individual litigation. Hence it would be impracticable for all members of the Class or subclasses to redress the wrongs done to them individually. There will be no difficulty in the management of this action as a class action.

18. Defendant has acted on grounds generally applicable to the Classes with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class and/or subclass as a whole.

19. The prosecution of separate actions against Defendant would create a risk of inconsistent or varying adjudications with respect to the individual Class members, which could establish incompatible standards of conduct for Defendant. In addition, adjudications with respect to individual members of the Class or subclasses could, as a practical matter, be

dispositive of the interests of the other members of the Class or subclasses not parties to such adjudications, or could substantially impede or impair their ability to protect their interests.

20. The members of the Class are readily identifiable through Defendant's records.

## V. THE PLAINTIFFS

21. Plaintiff Hayes Young has experienced charging and power problems with his vehicle which have been caused by the Defective ICCU manufactured by HK.

22. In or about December 2025, Plaintiff Young's 12-volt battery died after less than one (1) year of his ownership of said vehicle. Circle Hyundai replaced the 12-volt battery in Plaintiff Young's vehicle under the manufacturer's warranty, but the problem with the Defective ICCU persisted.

23. Plaintiff Young sought advice and service from his local service dealer, to wit, Circle Hyundai located in Shrewsbury, New Jersey. The dealer confirmed to plaintiff Young that many owners/lessees of Hyundai vehicles had experienced the same issues and that it emanated from a Defective ICCU. The dealer did not offer to replace Plaintiff Young's ICCU component.

24. Plaintiff Roy A. Williams is a resident of Kentucky. In August 2025, he leased a new 2025 KIA EV6, SUV. While operating the vehicle recently, the vehicle switched to "limp home mode" after a loud bang.

25. The vehicle was slowly driven off the highway to a safe public parking lot from where the car was towed to the dealer.

26. The dealer took over a week to "evaluate" the vehicle and later did a software upgrade and battery charge which was ineffective. The dealer did a subsequent installation of a new battery which also failed to correct the issue.

27. The problem was traced to the defective ICCU manufactured by defendant. Ultimately on or about March 24, 2026, the dealer concluded that the vehicle needed a new ICCU and it was replaced.

## VI. SUBSTANTIVE ALLEGATIONS

28. The ICCU Cars are equipped with an ICCU which charges the vehicle's 12-volt auxiliary battery and powers low-voltage vehicle accessory equipment.

29. The ICCU is a critical component in the manufacturing of the Electric Global Modular Platform ("EGMP") in the ICCU Cars which manages high to low voltage conversion. HK's ICCU was designed as a single unit which "multi-tasks" by managing AC charging conversion (high voltage to 12v) and by directional energy flow (V2L-V2G). In effect the Defective ICCU is designed to combines on-board charging ("OBC"), vehicle control and DC converter functionalities.

30. Defendant publicly describes its ICCUs as follows:

> Integrated charging control unit (ICCU) combines on-board charger (OBC) and low-voltage DC-DC converter (LDC) into one system. It performs all high-to-low voltage conversion functions necessary for charging high-voltage batteries, bidirectional V2X power conversion, and supplying power to in-vehicle electronic devices. This reduces system complexity and minimizes the number and size of components, maximizing space utilization in the vehicle and minimizing energy conversion losses to improve system efficiency. Hyundai KEFICO continues to develop customized products that integrate various control functions based on integrated and standalone charging control technologies.
>
> Features:

| | | |
|---|---|---|
| Integration of OBC & LDC | Smaller & Lighter | Up to 92% |
| Higher efficiency less system complexity | Enhanced cost competitiveness and space utilization | Power conversion efficiency |

31. Defendant has also described its ICCUs as follows:

> The E-GMP's newly developed Integrated Charging Control Unit (ICCU) represents an upgrade from existing On Board Charging (OBC). (emphasis supplied)

32. Defendant touts its ICCU as superior to OBC systems without warning consumers of (a) safety hazards; (b) proclivity to failure; (c) higher repair costs; (d) HK's inability to remedy the design defect because it does not have an alternative design; (e) that ICCU units require replacement of the entire unit which when replaced after failure are replaced with the same defectively designed ICCU; (f) ICCU failures can cause abrupt power failures while the vehicle is moving at a high rate of speed.

33. Other electric vehicles sold in the USA are designed and built with OBCs which consist of separated components performing in the aggregate the same functions as Defendant's ICCUs.

34. OBCs allow for cheaper targeted repairs and the failure of one component (*i.e.,* either the OBC or the vehicle converter controller) does not result in the same dangerous power failures as in ICCU cars.

35. OBC electric vehicles include Chevrolet Bolt, Tesla Model 34, Ford F-150 Lightening and the Porsche Taycan and do not experience anywhere near the recall levels of Defendant's ICCUs.

36. Hyundai, KAI and Genesis recalls for ICCU issues have totaled over 140,000 while other EVs using OBC have had relatively small recalls (*i.e.*, Audi recalled 13,769 units of its 2024-2025 Q4-E Tron models.

37. The Defective ICCUs are prone to fail which results in or is caused by an open ICCU fuse which results in an inability to charge the 12-volt battery after which motive power

will fail as the battery drains. The battery's "state-of-charge" depletes rapidly causing a loss of power which increases the risk of a crash.

38. In October 2022, after investigating warranty returns due to damage to the ICCU, Hyundai traced the problem to the ICCU itself, which can stop charging the 12-volt battery and cause loss of drive power among other adverse effects on the ICCU Cars' functionality.

39. Defective ICCU failures have resulted in the recall of approximately 180,000 vehicles across the following models and years:

| | |
|---|---|
| 2022-2024 | KIA EV 6 |
| 2022-2024 | Hyundai IONIQ 5 |
| 2023-2025 | Hyundai IONIQ 6 |
| 2023-2025 | Genesis GV 60 |
| 2023-2025 | Genesis GV 70 "Electrified" |
| 2023-2024 | Genesis GV 80 "Electrified" |

40. There have been at least two recalls in March 2024 and later in November 2024 of vehicles with Defective ICCUs.

41. Consumer Reports had a lengthy expose in its February 2026 issue by Keith Barry, Senior Autos Reporter titled "Unit Issues Cause Problems for EV Owners":

> Readers have asked us why the Hyundai Ioniq 5 and other electric vehicles from Hyundai, Genesis, and Kia don't score higher in Consumer Reports' evaluations despite their many merits. As with many vehicles, the answer comes down to reliability issues, and in the case of Hyundai, Genesis, and Kia EVs, those issues can often be traced back to a specific complaint: the integrated charging control unit, or ICCU.
>
> In Consumer Reports' surveys of more than 380,000 vehicles, Hyundai and Kia EV owners repeatedly complained about charging failures, power loss while driving, and other electrical issues that could make the car undrivable. These all contributed to below-average predicted reliability scores for the Hyundai Ioniq 5, Genesis GV60, Kia EV6, and Kia EV9. (The Hyundai Ioniq 9 and Ioniq 6 also share the same part.)

> According to Consumer Reports' reliability survey data, between 2 and 10 percent of Hyundai and Kia EV owners experienced ICCU-related issues, depending on the model and model year. By comparison, the average charging problem rate for all other 2023-2025 EVs in our survey is 1 percent or less.
>
> "It's not unusual for our reliability surveys to uncover so many issues related to a single part, but the fact that we continue to see this year after year is interesting," says Steven Elek, program leader of auto data analytics at Consumer Reports. "The Hyundai Ioniq 5 actually performed better than the Tesla Model Y in our own testing, but ICCU failures hurt the Ioniq 5's reliability so much that it has a lower Overall Score than the Model Y, and didn't meet the criteria for a spot among our Top Picks."

42. The Defective ICCU's have reduced the trade-in, residual and/or retail value of the Defective ICCU vehicles.

43. These adverse effects include but are not limited to outright ICCU failures, failure to charge, electrical system warning light activation while driving, speed limitations, total operational failures; abrupt losses of power, battery damage and total power failure.

44. Some Hyundai owners have also reported that plugging their vehicle into a home charger has caused damage to the plug and surrounding wall.

45. Various Hyundai owners have reported warnings such as: "stop vehicle check power supply;" "check electric vehicle system;" "12-volt battery voltage low stop safely"; "turn power off immediately. Check power supply."

46. That the source of the problem is the actual ICCU component is confirmed by the fact that various software update "fixes" tried by Hyundai have failed to correct the issues.

47. Users have publicly reported that dealerships have confirmed the widespread prevalence of these problems and seem to agree that the source is the ICCU.

48. Hyundai has heretofore refused to replace the ICCU probably due to the fact that Defendant only produces Defective ICCUs, Hyundai, KIA and Genesis dealers instead applied mobile software fixes which failed to remedy the defect.

49. When Hyundai does replace an ICCU it has apparently been replacing some ICCUs with the same defective supply of ICCUs. One owner reported that the dealership replaced the ICCU three times.

50. The ICCU was defectively designed and all HK ICCUs have the same defective designs which makes it inherently dangerous to operators and other drivers' safety. HK deliberately chose the design of the Defective ICCUs to reduce costs.

51. When HK was designing, marketing and selling its ICCUs, there were other safer, economically feasible (for the consumer) and practical alternative designs such as OBC systems used by other EV makers.

52. The risks of the design of the Defective ICCUs outweighed benefits and were much more dangerous to safety than the consumer could reasonably expect.

## VII. DEFENDANT'S CONCEALMENT AND OMISSIONS CAUSED LOSS AND DAMAGE TO CAR BUYERS

53. Had the Defendant truthfully disclosed and reported that its ICCUs were as described in paragraph 31 herein, consumers would have been less likely to purchase the Defective Cars and/or, would have abstained outright or sought substantial discounts and/or upgrades. As a proximate cause of Defendant's design defect, misrepresentations, omissions and warranty breaches detailed in this complaint, Plaintiffs and sub-class members purchased Defective Cars and were damaged.

54. Plaintiffs and the sub-class members who purchased vehicles with Defective ICCUs did not get the benefit of the bargain they struck. Instead, they received cars whose

electric power was significantly inferior to what was advertised and reasonably to be expected and were therefore of lesser value. Accordingly, purchasers of the Defective Cars with Defective ICCUs, including Plaintiffs and sub-class members, have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the vehicles with Defective ICCUs.

55. The Defendant's omissions and other conduct in failing to truthfully disclose to prospective buyers that the ICCUs were defective caused Plaintiffs and sub-class members substantial injury in the form of price premiums, overpayments for products and diminished resale value, repair and towing costs and loss of use described herein.

## VIII. TOLLING

56. **Tolling of the Limitations Period** The Defendant had actual knowledge for several years that the ICCUs were designed defectively and prone to fail.

57. **Continuing Act Tolling** Beginning in or around 2022, Defendant continuously supplied Defective ICCUs to Hyundai, Genesis and KIA for sale in vehicles.

58. At all relevant times, the Defendant knew that it was concealing and misrepresenting material facts, but continued to misrepresent and conceal information in its marketing and sales materials. Thus Plaintiffs and sub-class members' claims are not time barred.

59. **Fraudulent Concealment Tolling** State consumer protection laws, together with the doctrine of equitable tolling and/or the discovery rule, toll the applicable statutes of limitations for all class members because of Defendant's conduct, including but not limited to concealment and omission of material facts.

60. This duty to disclose arose, among other things, due to the Defendant's control over manufacturing, marketing and representations about the cars.

61. The Defendant knew about the Defective ICCUs.

62. Despite its knowledge, the Defendant actively concealed this material information from the Plaintiffs and other class members.

63. The Defendant actively concealed the information to continue to profit from the sale of its defective parts and prevent Plaintiffs and other class members from bringing suit or otherwise seeking redress.

64. Plaintiffs and sub-class members justifiably relied on the Defendant to disclose material facts because the truth was not discoverable by Plaintiffs and the other class members through reasonable efforts. Any applicable statute of limitations has been tolled by the Defendant's knowledge, active concealment, and denial of the facts alleged herein, which behavior is ongoing.

65. Defendant is estopped from asserting that statutes of limitations were running for the duration of time Class Members were unaware of Defendant's Defective ICCUs in their own cars.

66. Defendant is equitably estopped from asserting the statutes of limitations ran against the claims of class members.

67. Additional information supporting allegations of omissions and misrepresentations is in the control of the Defendant.

68. Defendant has and had a duty to disclose to Class members the defects.

69. Defendant breached express and implied warranties and actively and affirmatively concealed and suppressed, both pre-sale and post-sale, the existence of the ICCU defects which imperiled drivers, passengers and other motorist safety.

## IX. THE INJURIES SUFFERED BY PLAINTIFFS AND OTHER CLASS MEMBERS

70. Plaintiffs and all purchasers and lessees of the Defective Cars (who, as detailed below are the members of the putative Classes) have suffered injury and been damaged by Defendant's unconscionable practices and breaches of its warranties. Specifically, Plaintiffs and all members of the putative Class paid for a vehicle with Defective ICCUs that was represented to have a superior and advanced electrical charge system over OBCs.

71. Plaintiffs and all members of the putative Classes received vehicles that were worth substantially less than what they paid.

## COUNT I

**By Plaintiff Young For Violations of New Jersey's Consumer Fraud Act, N.J.S.A. § 56:8-2, *et seq.* (On Behalf of the New Jersey Sub-Class)**

72. Plaintiff Young incorporates the foregoing paragraphs as if fully set forth herein.

73. Plaintiff Young brings this claim against Defendant on behalf of himself and the New Jersey Class.

74. Defendant has engaged in deceptive, unfair and/or misleading commercial practices in the advertising, promotion, marketing, and distribution of the Defective ICCUs sub-class.

75. Defendant represented that the ICCUs had characteristics, uses, benefits, or qualities that they did not have.

76. In its advertising, promotion, and marketing of the ICCUs, Defendant misrepresented material facts to Plaintiff Young and other members of the sub-Class with respect to the ICCUs' qualities.

77. Defendant's conduct is subject to New Jersey law for ICCUS Cars sold in New Jersey.

78. Defendant's conduct was objectively deceptive and had the capacity to deceive reasonable consumers under the circumstances. The fact that the Defective ICCUs have been proven to fail because of their design and create a life threatening situation was a material fact to which a reasonable consumer would attach importance at the time of purchase or lease.

79. Defendant's practices, as detailed herein, violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq.

80. As a direct and proximate result of Defendant's violations of the New Jersey Consumer Fraud Act, Plaintiff Young and other members of the sub-class have suffered ascertainable losses, which include but are not limited to, the diminished value of their vehicles and the failure to receive the benefit of the bargain promised to them by Defendant (*i.e.*, the vehicles they received were less valuable at the time of purchase or lease than they paid); and the substantial out-of-pocket costs. Accordingly, Plaintiff Young and other members of the sub-class were harmed by, and Defendant is liable for, Defendant's actions in violation of the New Jersey Consumer Fraud Act.

81. Defendant is liable to Plaintiff Young and the members of the sub-class for treble damages caused by its deceptive conduct, and for reasonable attorneys' fees as set forth in the New Jersey Consumer Fraud Act.

## COUNT II

**By Plaintiff Young For Breach of Express by Description And Implied Warranty in Violation of N.J. Stat.§ 12A)**
**(On Behalf of the New Jersey Class)**

82. Plaintiff Young incorporates the foregoing paragraphs as if fully set forth herein.

83. Plaintiff Young brings this claim against Defendant on behalf of himself and the New Jersey sub-class pursuant to Section 2-313(b) of the Uniform Commercial Code, adopted under New Jersey law pursuant to N.J. Stat. § 12A:2-313(b). That section provides: "Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to that description."

84. Defendant's express warranties by description and implied warranties were designed to induce Young and other members of the New Jersey sub-class to purchase the vehicles containing the Defective ICCUs.

85. Defendant's express warranties by description and implied warranties became part of the basis of the bargain into which Plaintiff Young and other members of the sub-class entered when they purchased the vehicles which contained the Defective ICCUs.

86. Defendant's breached express warranties by description and implied warranties.

87. As a direct and proximate result of Defendant's breach of its express warranties by description and implied warranties with Plaintiff Young and the sub-class members of the Class, Plaintiff Young and the members of the Class did not receive the full benefit of their bargain and suffered damage by receiving vehicles containing Defective ICCUs that were less valuable than the vehicles that Defendant had represented to them.

88. Defendant is liable to Plaintiff Young and the members of the sub-class for all damages caused by Defendant's breach of express warranties by description and implied warranties.

**COUNT III**

**By Plaintiff Williams For Violations of the Kentucky Consumer Protection Act**
**Ky. Rev. Stat. Ann.§ 367.110 *et seq.***
**(On Behalf of the Kentucky State Sub-Class)**

89. Plaintiff Willliams incorporates by reference all paragraphs as though fully set forth herein.

90. This count is brought on behalf of the Kentucky Commonwealth sub-class against Defendant.

91. Defendant, Plaintiffs Williams and the Kentucky State Class are "persons" within the meaning of the Ky. Rev. Stat. § 367.110(1).

92. Defendant engaged in "trade" or "commerce" within the meaning of Ky. Rev. Stat. § 367.110(2).

93. The Kentucky Consumer Protection Act ("Kentucky CPA") makes unlawful "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce ...."Ky. Rev. Stat.§ 367.170(1). Defendant participated in misleading, false, or deceptive acts that violated the Kentucky CPA. By failing to disclose and by actively concealing the defects identified herein, Defendant engaged in deceptive business practices prohibited by the Kentucky CPA.

94. In the course of its business, Defendant concealed and suppressed material facts concerning the Defective ICCUs.

95. Kentucky sub-class members had no way of discerning that Defendant's ICCUs were defective.

96. Defendant thus violated the Act by, at minimum: expressing or implying that Defective ICCUs have characteristics, uses, benefits, and qualities which they do not have.

97. Defendant intentionally and knowingly omitted material facts regarding the Defective ICCUs with intent to mislead the Kentucky Sub-Class.

98. Defendant knew or should have known that their conduct violated the Kentucky CPA.

99. Defendant owed the Kentucky Sub-Class a duty to disclose the safety risks, the true nature of the Defective ICCUs, because Defendant:

A. possessed exclusive knowledge that they were manufacturing, selling, and distributing ICCU throughout the United States that did not perform as advertised and/or were unsafe and presente4d an unreasonably high risk to the safety of drivers, owners, passengers and other motorists;

B. intentionally concealed the foregoing from Kentucky State Class members; and/or;

C. made incomplete representations about the Class ICCUs while purposefully withholding material facts that contradicted these representations.

100. Defendant's concealment of the Defective ICCUs true facts were material to the Kentucky Sub-Class.

101. Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Kentucky Sub-Class, about the true environmental cleanliness and efficiency of the Defective ICCUs, the quality of the Defendant' brands, and the true value of the Defective ICCUs.

102. Defendant's violations present a continuing risk to the Kentucky State Sub-Class as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

103. Members of the Kentucky Sub-Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and concealment of and failure to disclose material information. Defendant had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Kentucky CPA. All owners of Defective ICCUs suffered ascertainable loss as a result of Defendant's deceptive and unfair acts and practices made in the course of Defendant's business.

104. As a direct and proximate result of Defendant's violations of the Kentucky CPA, Kentucky Sub-Class members have suffered injury-in-fact and/or actual damage.

105. Pursuant to Ky. Rev. Stat. Ann.§ 367.220, the Kentucky Sub-Class seeks to recover actual damages in an amount to be determined at trial; an order enjoining Defendant's unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under Ky. Rev. Stat. Ann. § 367 .220.

## COUNT IV

**By The Kentucky Plaintiff For Breach of Implied Warranty of Merchantability**
**Ky. Rev. Stat.§§ 335.2-314 and 355.2A-212**
**(On Behalf of the Kentucky State Sub-Class)**

106. Plaintiff Williams re-alleges and incorporates by reference all paragraphs as though fully set forth herein.

107. This count is brought on behalf of the Commonwealth of Kentucky Sub-Class against Defendant.

108. Defendant is and was at all relevant times a "merchant[s]" with respect to motor vehicles components under Ky. Rev. Stat.§§ 355.2-104(1) and 355.2A-103(3), and "sellers" of motor vehicles under§ 355.2-103(1)(d).

109. The ICCUs are and were at all relevant times "goods" within the meaning of Ky. Rev. Stat. $$ 355.2-105(1) and 355.2A-103(1)(h).

110. A warranty that the ICCUs were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ky. Rev. Stat. §§ 335.2-314 and 355.2A-212.

111. As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Commonwealth of Kentucky Sub-Class members have been damaged in an amount to be proven at trial.

**COUNT V**

**By All Plaintiffs Unjust Enrichment**
**(On Behalf Of A National Class)**

112. Plaintiffs incorporate the foregoing paragraphs as if set forth fully in this count.

113. Defendant benefited financially from its deceptive conduct, breaches of warranty and misrepresentations as described in this complaint at the expense of Plaintiffs and the Class.

114. The proposed class representatives and class members sustained monetary damages as described in this complaint.

115. Allowing the Defendant to retain its monetary enrichment from their wrongful and unlawful acts would be unjust and inequitable.

116. The proposed class representatives and class members request that the Defendant disgorge their profits from their wrongful and unlawful conduct and that the Court establish a constructive trust funded by the benefits conferred upon the Defendant as a result of

their wrongful conduct. The proposed class representatives and class members should be designated beneficiaries of the trust and obtain restitution for their out-of-pocket expenses caused by the Defendant's conduct.

117. Wherefore, the proposed class representatives and class members demand judgment against defendant for multiple damages, interest, costs and attorneys' fees.

**PRAYERS FOR RELIEF**

WHEREFORE, Plaintiffs prays for relief in the form of an order as follows:

a. Certifying this action as a class action under Federal Rule of Civil Procedure 23, and appointing Plaintiffs as class representatives and their attorneys as class counsel;

b. Awarding actual damages to Plaintiffs and the Members of the Classes;

c. Awarding attorneys' fees, expenses, and the costs of this suit, together with prejudgment and post-judgment interest at the maximum rate allowed by law; and

d. Awarding such other and further relief which the Court finds just and proper.

**JURY DEMAND**

Plaintiffs demands a trial by jury on all claims so triable.

Dated: April 21, 2026

SQUITIERI & FEARON, LLP

By: */s/Lee Squitieri*
Lee Squitieri
205 Hudson Street, 7th Floor
New York, New York 10013
(212) 421-6492